

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2007

# State Farm Mutl Auto v. Rosenthal

Precedential or Non-Precedential: Precedential

Docket No. 06-2158

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"State Farm Mutl Auto v. Rosenthal" (2007). *2007 Decisions.* Paper 1157.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2158

———

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.,

*Appellant*

v.

BRIAN D. ROSENTHAL

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 05-cv-01156)
District Court Judge: Honorable Bruce W. Kauffman

———

Argued March 13, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER*,
*Circuit Judges*.

———

* The Honorable Eugene E. Siler, Jr., Senior United States
Circuit Judge for the Sixth Circuit, sitting by designation.

(Filed April 20, 2007)

John J. McGrath (Argued)
McKissock & Hoffman, P.C.
1818 Market Street, 13th Fl.
Philadelphia, PA 19103

    *Counsel for Appellant*

Richard P. Hunter, Jr. (Argued)
1800 J.F.K. Blvd., Suite 1500
Philadelphia, PA 19103

    *Counsel for Appellee*

Scott B. Cooper (Argued)
Schmidt, Ronca & Kramer
209 State Street
Harrisburg, PA 17101

Matthew S. Crosby
Handler, Henning & Rosenberg
1300 Linglestown Road
Harrisburg, PA 17110

    *Counsels for Amicus Appellant Pennsylvania Trial
    Lawyers*

———

OPINION OF THE COURT

2

VAN ANTWERPEN, *Circuit Judge*.

Appellant State Farm brought this declaratory judgment action against Appellee Brian D. Rosenthal alleging that his underinsured motorist claim was time barred by Pennsylvania's four-year statute of limitations on contract claims. To resolve this action, the District Court had to predict when the Pennsylvania Supreme Court would begin running the statute of limitations on such claims. Ruling in favor of Rosenthal, the District Court predicted that the statute of limitations on such claims would begin to run when the insurer denies the insured's claim. We will affirm the District Court's ruling in favor of Rosenthal on different grounds, as we predict that the Pennsylvania Supreme Court would start running the statute of limitations on the date on which the insured settles with or obtains an award from the adverse driver for less than the value of his damages.

## I.

The facts of this case are not in dispute. On June 8, 1998, Brian Rosenthal, a State Farm insured who resides in Pennsylvania, was struck from behind by another driver. In August 1999, Rosenthal met with a vocational specialist who opined that Rosenthal sustained a loss of earning capacity in excess of $2 million as a result of two accidents—the one in June 1998 and an earlier one in March of the same year. Also in August 1999, Rosenthal obtained a report from an economist who estimated his lost wages due to these

accidents at $1 million.[1]

On June 9, 2003, Rosenthal reached an agreement to settle his claim against the driver who hit him for $85,000. This other driver had a liability policy with a limit of $100,000. In a letter dated July 9, 2003, Rosenthal's attorney requested that State Farm approve the settlement agreement and notified the company about his intent to pursue an underinsured motorist (UIM) claim against State Farm as follows: "As you are aware, I will be pursuing a UIM case under Mr. Rosenthal's policy with your company."[2] App. at A25. State Farm notified Rosenthal's attorney of its consent to the settlement and continued to correspond with him about the details of his underinsured motorist claim for the next year.

On July 22, 2004, Rosenthal's attorney demanded underinsured motorist arbitration from State Farm. In response, on March 11, 2005, State Farm filed a complaint in

---

[1]Rosenthal is a lawyer who had his own law firm at the time of the accident. After the accident, Rosenthal claimed he could not bill as many hours because of neck and back pain.

[2]Underinsured motorist (UIM) claims arise when an insured's damages exceed those allowed for under the adverse driver's policy. Underinsured motorist coverage, therefore, picks up where the adverse driver's policy leaves off. In contrast, uninsured motorist (UI) claims arise when the adverse driver has no insurance at all.

the District Court seeking a declaratory judgment that Rosenthal's underinsured motorist claim was time barred because of Pennsylvania's four-year statute of limitations[3] on contract claims. Rosenthal filed a motion to dismiss, arguing the statute of limitations had not run. His motion was later converted into a motion for summary judgment. State Farm filed a response and a cross-motion for summary judgment. Their motions presented an issue that has yet to be decided by the Pennsylvania Supreme Court: when the statute of limitations begins to run on underinsured motorist claims.

On January 20, 2006, the District Court denied State Farm's summary judgment motion and granted Rosenthal's, predicting that the Pennsylvania Supreme Court would not start running the four-year statute of limitations on underinsured motorist claims until the insurer denies such a claim. In this case, the District Court found that date to be in March 2005, when State Farm refused to arbitrate and filed a declaratory judgment action. Under this reasoning, Rosenthal's underinsured motorist claim does not become stale until 2009.

State Farm filed this timely appeal on March 31, 2006.

## II.

The District Court had subject matter jurisdiction over

---

[3]The parties do not dispute that the four-year statute of limitations of 42 Pa. Cons. Stat. § 5525(a)(8) applies.

this diversity action pursuant to 28 U.S.C. § 1332(a)(1), and we have jurisdiction to review the District Court's grant of summary judgment pursuant to 28 U.S.C. § 1291. This Court's review of the District Court's grant of summary judgment is plenary. *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 246 (3d Cir. 2002) (citation omitted).

Because this case involves a novel question of Pennsylvania law not addressed by the Supreme Court of the Commonwealth, our task "is to predict how that court would rule." *Pa. Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981). In making this prediction, "we must consider the pronouncements of the lower state courts." *Connecticut Mutual Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir. 1983). Although such pronouncements "are not controlling on an issue on which the highest court of the state has not spoken, [we] must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273-74 (3d Cir. 1985) (citations omitted).

### III.

Based on our review of relevant Pennsylvania Superior Court caselaw, the parties' briefs, and the positions taken by the parties at oral argument, there seems to be three possibilities as to when the Pennsylvania Supreme Court would start running the four-year statute of limitations on underinsured motorist claims (listed chronologically): (1) the date of the accident (as State Farm argues); (2) the date on

which the insured settles with the adverse driver for less than the insured's damages (as Rosenthal argues); or (3) the date on which the insurer rejects the insured's underinsured motorist claim (as the District Court found and as amicus curiae advocates). The parties advance a variety of legal arguments and policy justifications for selecting one date over another. After reviewing the relevant caselaw on this topic and considering the practical consequences of this decision, we predict that the Pennsylvania Supreme Court would start running the four-year statute of limitations on underinsured motorist claims on the date on which the insured settles with the adverse driver for less than the value of the insured's damages.

## A.

We begin our analysis with a review of relevant Pennsylvania law.

While no Pennsylvania state court has addressed the statute of limitations for *under*insured motorist claims, there is ample caselaw from the Pennsylvania Superior Court regarding the statute of limitations for *un*insured motorist claims. *See Clark v. State Farm Auto. Ins. Co.*, 599 A.2d 1001 (Pa. Super. Ct. 1991); *Seay v. Prudential Prop. & Cas. Ins.*, 543 A.2d 1166 (Pa. Super. Ct. 1988); *Boyle v. State Farm Mut. Auto. Ins. Co.*, 456 A.2d 156 (Pa. Super. Ct. 1983). These cases are in agreement that the four-year statute of limitations begins to run when the right to payment of a benefit accrues to the insured, i.e., when "(1) the insured is in a motor vehicle accident; (2) the insured sustains bodily

7

injury as a result of the accident; and (3) the insured knows of the uninsured status of the other owner or operator." *Clark*, 599 A.2d at 1005.

In *Wheeler v. Nationwide Mutual Insurance Company*, a district court in the Eastern District of Pennsylvania examined this Superior Court line of uninsured motorist cases and determined "[the three] criterion [listed above] apply also to underinsured motorist cases." 749 F.Supp. 660, 662 (E.D.Pa. 1990). Interpreting these criterion in the underinsured context, *Wheeler* concluded the statute does not begin to run until the underinsured status of the adverse driver is definitively established, and reasoned as follows:

> Unlike an uninsured motorist case where the issue of whether a motorist has coverage at all is easily determined, the question of whether an insured motorist has *enough* coverage is not. This court holds that it is only at the time that [the insured] actually settled . . . with the underinsured motorist's insurance company . . . that the status of the situation as one involving an underinsured motorist was definitely ascertainable.

*Id*. (emphasis in original). Consequently, *Wheeler* concluded that the statute of limitations does not begin to run on an underinsured motorist claim until the insured settles his claim with the underinsured driver or obtains a judgment against him.

The reasoning of *Wheeler* seems to have been

8

followed until another court in the Eastern District rejected it in 2005 in *Motorist Mutual Insurance Company v. Durney*, No. 04-3232, 2005 U.S. Dist. LEXIS 33752 (E.D.Pa. Dec. 16, 2005). That case involved a Motorist Mutual insured who suffered approximately $100,000 in injuries as a result of a 1997 accident with a driver who had only $35,000 of liability coverage. The insured settled with the underinsured driver for $35,000 (with the consent of Motorist Mutual) in 1999, and then corresponded with Motorist Mutual about her ongoing treatment costs and her medical condition over the next five years. In 2004, without ever having denied its insured's claim or notifying its insured about the need to commence arbitration, Motorist Mutual filed a declaratory judgment action asking the District Court to find the insured's claim time barred. The District Court ruled the claim was not time barred, essentially analogizing a dispute over underinsured motorist benefits to any other type of contract dispute:

> In contracts disputes generally, the statute of limitations does not begin to run when the contractual rights vest, but when the contract is breached. By this reasoning, a statute of limitations will *not* start to run in the UIM context when the insured's rights to UIM under the insurance contract vest (i.e., when the insured settles with the other motorist), but when the cause of action against her insurer accrues.

*Id*. at *10 (emphasis added). The Court went on to find that a cause of action does not "accrue" in the underinsured context until the insurer denies the insured's claim.  As a consequence, the statute of limitations at issue in *Motorist*

9

*Mutual* did not commence until 2004, when Motorist Mutual indicated it would breach the contract by filing a declaratory judgment action. In support of its decision, the District Court cited *Burkshire Mutual Insurance Company v. Burbank*, 664 N.E.2d 1188, 1190 (Mass. 1996), a case in which the Supreme Court of Massachusetts found that such a rule comported with the rule adopted in several other states.[4]

Two other Pennsylvania Superior Court cases are relevant to the statute of limitations issue before us: *Harper v. Providence Washington Insurance Company*, 753 A.2d 282 (Pa. Super. Ct. 2000) and *Krakower v. Nationwide Mutual Insurance Company*, 790 A.2d 1039 (Pa. Super. Ct. 2001). In *Harper*, an insured sought to sue his insurance company for the damages he sustained in excess of those covered by the adverse driver's policy *prior to settling his claim with the adverse driver*. The insurance company argued this claim was premature under their contract, as the insured had not yet exhausted the liability policy of the adverse driver. The Superior Court rejected this argument, finding "exhaustion clauses as a predicate for coverage under underinsurance provisions of an insurance contract [] void as against public policy." *Harper*, 753 A.2d at 285 (internal quotation and citation omitted). It further found that, as long as the insured credits the insurance company the face value of the adverse driver's liability coverage, the insured's underinsured

---

[4]*Burkshire Mutual* seemed to approve of this approach, in part, because insurers could contract around it. *See Burkshire Mut.*, 664 N.E.2d at 1190 n.4.

motorist claim may commence before his claim against the adverse driver is settled.

In *Krakower*, an insured won an underinsured motorist award from his insurance company in front of a panel of arbitrators in January 2000 and then lost his claim against the adverse driver in front of a jury in February 2000. The insurer challenged this result, arguing it was "contrary to law." *Krakower*, 790 A.2d at 1040. In upholding *Harper*, the Superior Court acknowledged the inconsistent result, but noted that "[h]ad an arbitration award been entered in favor of the insurer and a jury verdict rendered in favor of the insured, the insured would have no right to seek to void the arbitration ruling because it was inconsistent with the jury verdict." *Id*. at 1041. Accordingly, it held that, "irrespective of the outcome of the third party action, it is appropriate to allow the underinsured motorist arbitration action to proceed where the insurer is given credit for the full amount of the third party liability policy limits." *Id*.

**B.**

Turning now to the question before us, we note at the outset that neither the approach advocated by State Farm nor the approach adopted by the District Court are well-supported by existing Superior Court caselaw. As discussed above, State Farm argues the Pennsylvania Supreme Court would start running the statute of limitations on underinsured motorist claims on the date of the accident. They argue this approach is dictated by the Superior Court's decisions in *Krakower* and *Harper*. We disagree. While these two cases

11

hold that an insured *may* pursue an underinsured claim immediately after an accident (because this is when the right to the benefit "vests"), nothing in these cases suggests this is when an insured *must* pursue such a claim. In addition, interpreting *Krakower* and *Harper* in this way would lead to an incongruous result: The statute of limitations on underinsured claims would begin running before the statute on uninsured claims. This would be a particularly harsh result given how much more difficult it is to ascertain whether a driver is underinsured as compared to uninsured. Furthermore, as amicus curiea note, State Farms' approach would encourage an insured to assert an underinsured motorist claim against his insurer solely to preserve such a claim, resulting in unnecessary court filings.

The approach adopted by the District Court, i.e., waiting to start the statute of limitations until the insurer denies the underinsured claim, is equally unsupported by existing Pennsylvania caselaw. The District Court based its decision largely on *Motorist Mutual*, which in turn is based on the well-established principle of contract law that a cause of action does not accrue until one party to the contract breaches. Since a breach does not occur in this context until the insurer denies its insured's underinsured motorist claim, the District Court reasoned the statute of limitations could not begin running until this time. This approach, while amply supported by general contract principles, did not consider the Superior Court's decisions with respect to uninsured motorist claims. Given the similarity between uninsured and underinsured claims, we believe these decisions should help guide our analysis. In addition, the District Court's approach

does not account for the proclivity of Pennsylvania to treat insurance contracts differently from other types of contracts. *See, e.g.,* Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701-1799.7 (specially regulating motor vehicle insurance contracts); *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1351 (Pa. 1978) (explaining "normal contract principles [are] no longer applicable in insurance transactions"); *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 196-97 (Pa. 1977) (rejecting a "strict contractual approach" when construing an insurance policy because such an approach "fails to recognize the true nature of the relationship between insurance companies and their insureds"); *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 836 (Pa. Super. Ct. 2005) (explaining that not all contract principles apply to consumer insurance contracts); *Pressley v. Travelers Prop. & Cas. Corp.*, 817 A.2d 1131 (Pa. Super. Ct. 2003) (explaining "because the insurer is in the business of writing insurance agreements, the recent trend in insurance cases has been away from strict contractual approaches"); *but see Nationwide Mut. Ins. Co. v. Johnson*, 676 A.2d 680, 684 (Pa. Super. Ct. 1996) (asserting that an insurance contract is no different than any other contract). Finally, as a practical matter, this approach has no mechanism for limiting stale claims and could be seen as encouraging insurers to either routinely deny underinsured motorist benefits to claimants (to start the clock running) or compel arbitration with respect to such claims, potentially confusing consumers.

Rosenthal argues the Pennsylvania Supreme Court would begin running the statute of limitations on the date the insured settles his claim with or obtains an award from the

13

underinsured driver, and we believe he is correct. First, this approach has roots in existing Pennsylvania caselaw. *See Wheeler*, 749 F.Supp. at 662 (deriving this approach from the Superior Court's uninsured motorist claim line of cases). Second, the adoption of this approach harmonizes the law with respect to the statute of limitations involving uninsured and underinsured claims. That is, regardless of whether the adverse driver is uninsured or underinsured, the date on which the statute of limitations begins to run is essentially the same, i.e., the date on which the insured definitively ascertains the deficient insurance status of the adverse driver. Finally, this approach is practical, in that it gives an insured time to assess his own damages and learn of the adverse driver's policy limits. In this way, it eliminates the need for the insured to prematurely file an underinsured motorist claim in order to protect his rights. Accordingly, we hold that the four-year statute of limitations begins to run when the insured settles his claim with or obtains an award from the underinsured driver.

Applying the date-of-settlement approach to Rosenthal's claim, we conclude that it is not time barred. Rosenthal settled his claim against the adverse driver in 2003, and, consequently, his July 2004 demand for underinsured motorist arbitration was well within the four-year statute of limitations.

## IV.

For the foregoing reasons, we will affirm, on different grounds, the District Court's decision to grant Rosenthal's

14

Motion for Summary Judgment and deny State Farm's Cross-Motion for Summary Judgment.